STATE OF NEBRASKA, APPELLEE, V. EDWARD A. RUSSELL, APPELLANT.

497 N.W.2d 393

Filed March 26, 1993.   No. S-92-479.

C.M. Radosevich for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

BOSLAUGH, J.

After a bench trial, the defendant, Edward A. Russell, was convicted of first degree murder, in violation of Neb. Rev. Stat. § 28-303 (Reissue 1989), and use of a weapon to commit a felony, in violation of Neb. Rev. Stat. § 28-1205 (Reissue 1989). Russell was sentenced to life imprisonment on the murder conviction and to a 15-month term of imprisonment on the weapon conviction, with 283 days' credit given for time served. On appeal to this court, the defendant's sole assignment of error is that the evidence was insufficient to support his conviction of first degree murder.

In reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, and the finding must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Tucker*, 242 Neb. 336, 494 N.W.2d 572 (1993); *State v. Alcorn*, 240 Neb. 400, 481 N.W.2d 921 (1992).

An appellate court will not set aside a finding of guilty in a criminal case where the finding is supported by relevant evidence, and only where the evidence lacks sufficient probative force as a matter of law may the appellate court set aside a finding of guilty as unsupported by the evidence beyond a reasonable doubt. *State v. Smith*, 242 Neb. 202, 494 N.W.2d 126 (1993).

The defendant spent the morning of July 26, 1991, in the company of Curtis, Spencer, and Gary Valentine. The group, which spent the morning drinking alcoholic beverages and socializing, eventually moved to an area outside of an apartment house located near the intersection of 19th Avenue and Jones Street in Omaha, Nebraska. After a verbal dispute of some kind, the defendant was beaten by Spencer and Gary Valentine. The defendant claims that he lost his watch and gold chain in the incident. Later, the defendant returned to the scene of the incident with two other people. The defendant had a five-shot .32-caliber revolver mounted on a .38-caliber frame with him at the time. The defendant told the police that it was his intention to go back to the area where he had been beaten in

order to retrieve his watch and chain.

When the defendant returned, Michael White, Rudy Rucker, and the victim, Gregory George, were seated under a tree in a grassy area between the street and apartment building near the location of the earlier altercation. White sat on a box facing east, with his back toward 19th Avenue. Rucker was seated on a chair to White's left, looking south toward Jones Street. George was sitting on a bucket directly across from White, facing west toward 19th Avenue.

White testified that the three men noticed a Cadillac head down 19th Street, turn onto Jones Street, and move toward their location. After turning onto Jones Street, the car slowed down considerably. White testified that he became concerned and jumped up to hide behind a tree. White testified that he saw the defendant jump out of the backseat of the Cadillac with a gun in his right hand. White testified that when the defendant got out of the car, White saw George turn to go toward the corner of the building near a passageway between the buildings and saw Rucker scramble toward some nearby bushes. White further testified that once the defendant had moved out of the vehicle he stood upright, raised his arm chest high, and fired a shot toward the place where George had gone. White testified that the defendant's right hand, holding the gun, was facing palm-side up. White stated that he heard the defendant ask, "Where did they go?", but he could not remember whether the question was asked before or after the gun was fired. White stated that although he did not see the defendant aim the gun at anyone, his initial reaction after the shot was fired was to look toward the corner of the building in the direction that the shot had been fired.

White testified that after the shot had been fired, the defendant moved toward the place where the men had been sitting, with the gun still in his hand. The defendant looked at Rucker, whose nickname was "Low-Life," and said, "I ought to kill you, Low." Rucker responded that he had never done anything to the defendant.

Rucker testified to a similar version of the events. Rucker testified that when the defendant got out of the vehicle he asked, "Where are they at now?" As the defendant asked this

question, the gun was pointed toward where the three men were sitting and was fired. Rucker stated that he then went to his hands and knees. George got up and moved toward the space between the buildings. Rucker stated that after the shot was fired, the defendant looked at him and stated, "Low, I ought to kill you." After this statement, the defendant returned to the vehicle and left.

In his statement to the police, the defendant admitted that at the scene of the altercation he had stepped out of the car he was riding in and "caught myself shooting up in the air." One shot was fired, but the defendant claims that he did not see anybody get hit. The defendant also told the police that he had asked the three men where his property was and why had he been beaten. When asked by the police why he had taken a gun out at the scene, the defendant stated, "I guess more or less for protection or something." The defendant further stated that he was angry and hurt.

After the defendant's car pulled away from the scene, White and Rucker followed the path that George had taken to the passageway between the apartment buildings. Drops of blood were found starting at the corner of the apartment building near the area where the three men had been sitting prior to the shooting. The drops of blood continued in a path leading to Rucker's apartment, where George was found lying on the floor with a bullet wound in his chest. George died from the gunshot wound.

The pathologist who performed the autopsy testified that the bullet passed through George's left upper arm and then entered the left side of his chest, passing through the right ventricle and coming to rest in the right chest cavity. The pathologist further testified that the bullet found in the chest cavity appeared to be a large caliber bullet which would be consistent with a .38-caliber bullet.

The defendant testified that after the incident he sold the gun to a drug dealer. He also asked a friend, Patricia Davis, to drive him to his brother's house near 22d and Howard Streets. Davis testified that as they drove by the area, she saw police gathered there. She saw the defendant turn away from the car window and put his hands up to his face. She further testified that the

defendant told her to keep going. When the police saw the defendant in the car, it was pulled over and the defendant was arrested.

On the appeal to this court, the defendant argues that the circumstantial evidence of his intent to kill the victim was insufficient to support a finding of his guilt beyond a reasonable doubt. The defendant argues that although he may have had "evil intentions with respect to the Valentine boys," brief for appellant at 8, he had no intent to kill the victim. The defendant maintains that when he returned to the scene of the incident looking for the Valentine brothers, he shot the gun into the air, and the bullet must have ricocheted off something and accidently hit George.

Circumstantial evidence is evidence of one or more facts from which another fact can logically be inferred. *State v. Tucker*, 242 Neb. 336, 494 N.W.2d 572 (1993); *State v. Rokus*, 240 Neb. 613, 483 N.W.2d 149 (1992).

> When some evidence in a criminal case is circumstantial, such evidence is to be treated in criminal cases the same as direct evidence, and the State is entitled upon review to have all conflicting evidence, both direct and circumstantial, resolved in its favor. . . . Circumstantial evidence is adequate to support a conviction if the evidence, taken as a whole, establishes guilt beyond a reasonable doubt.

(Citations omitted.) *State v. Tucker*, 242 Neb. at 345, 494 N.W.2d at 579.

"The intent involved in an actor's conduct is a mental process and may be inferred from the conduct itself; the actor's language, if any, in reference to the conduct; and the circumstances surrounding an incident." *State v. 1987 Jeep Wagoneer*, 241 Neb. 397, 400, 488 N.W.2d 546, 548 (1992), citing *State v. Rokus, supra*. "Intent to kill may be inferred from deliberate use of a deadly weapon in a manner reasonably likely to cause death." *State v. Rokus*, 240 Neb. at 622, 483 N.W.2d at 155.

The theory advanced by the defendant, that the gun was shot in the air and the bullet ricocheted and accidently hit the victim, could reasonably be rejected by the trial court. At trial, the

pathologist testified that the bullet hit the victim's skin at an angle that was not completely perpendicular, based on the shape of the wound, which suggested that the bullet may have been tumbling. The pathologist testified that the tumbling of the bullet could have been caused either by a defective gun or by the bullet's having been deflected. He testified that the bullet in this case could not have ricocheted off the ground. When asked if the bullet could have ricocheted off something else, the pathologist testified that if the bullet had hit something substantial, he believed it likely that the bullet would be distorted or flattened or have nicks, pieces, or chunks missing from it. The bullet in this case was intact.

Accordingly, it appears unlikely that the bullet fired by the defendant ricocheted off something before it struck the victim. Based upon all of the facts and circumstances, including the defendant's actions and statements, there was sufficient evidence to support the trial court's finding that the defendant was guilty of murder in the first degree for the death of George. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.