STATE OF NEBRASKA, APPELLEE, V. JASON L. MARKS, APPELLANT.

APPELLANT.

537 N.W.2d 339

Filed September 22, 1995. No. S-94-1247.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns for appellant.

Don Stenberg, Attorney General, and Delores Coe–Barbee for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

Jason L. Marks appeals his conviction of first degree murder and use of a firearm to commit a felony.

## SCOPE OF REVIEW

On a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *State v. One 1985 Mercedes 190D Automobile*, 247 Neb. 335, 526 N.W.2d 657 (1995).

In reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or reweigh the evidence. Such matters are for the finder of fact, and the verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *Id.*; *State v. Null*, 247 Neb. 192, 526 N.W.2d 220 (1995).

## FACTS

On May 9, 1994, Marks was charged by information with first degree murder and use of a firearm to commit a felony. The information alleged that Marks purposely and with deliberate and premeditated malice killed Arthur Godbolt. After a jury trial, Marks was found guilty of both charges, and on November 30, 1994, he was sentenced to life in prison for first degree murder and to a consecutive term of 5 to 10 years in prison on the weapons charge. He was not given credit for time served.

The testimony at trial showed that the victim, who was 16 years old, died as the result of a gunshot wound to the head following a drive-by shooting during the early morning hours of April 9, 1994. Michael Godbolt, the victim's cousin, testified that he was at his home at 5632 North 29th Street in Omaha prior to the incident and that he was waiting for the victim to give him a ride to his grandmother's house. At about 2:30 a.m., the victim arrived, got out of his car, and talked to Michael Godbolt. The victim then talked to Dana Butler, who was standing near the rear of the victim's car. Michael Godbolt testified that he heard five or six gunshots and that he ducked

inside another car. When he raised his head, he saw a car speed past. He then turned and saw the victim on the ground. The victim had been shot in the right temple.

Wade Stewart testified that he left his mother's house with her car at about 11:30 p.m. on April 8, 1994, and that he went to a girl friend's house, where he met Shawn King, Shawn's brother John King, and Marks. Stewart, Shawn King, and Marks later left to go riding around. Stewart drove, King was in the passenger's seat, and Marks was in the backseat. Stewart asked, "What if we get in some dirt?" Marks replied, "I got the strap," and showed Stewart a .32-caliber gun. Stewart said this meant that if they got into any trouble, Marks had a gun.

Stewart testified that Marks asked if he knew where some "smokers" were who would want to buy crack cocaine. Stewart, King, and Marks drove to 29th and Ellison Streets and talked to a woman who was on the sidewalk. Stewart said that as he continued north on 29th Street, he stopped to let a pedestrian cross the street and then started driving away. At that point, King began firing a .25-caliber gun, and Marks fired two or three shots from the backseat. Marks then stated, "The dude fell." Marks also talked about how one of his guns had jammed and said he was "blasting from both straps." Stewart testified that Marks was carrying two guns: a .38-caliber and a .32-caliber.

King, who was charged with first degree murder, testified for the State in exchange for a reduction of the charge to attempted first degree murder. King said he did not know the victim, but said that he, his brother, and Marks had fired shots at the victim's car 3 or 4 weeks prior to this incident. King had used a .25-caliber semiautomatic, his brother had used a .32-caliber gun, and Marks had used a .38-caliber gun. King said that Marks had talked about "getting" the victim because a friend of the victim's had shot at Mario Shanklin's house. King claimed that 2 or 3 weeks before the incident, Marks said he wanted to get the victim in retaliation for the drive-by shooting at Shanklin's house.

King further testified that he went to a basketball game with his brother, Marks, and Shanklin prior to the incident and that the group went to a house in the Logan Fontenelle area after the

game. King and Marks then left the house with Stewart. Stewart said they could shoot out of the car. King testified that when they turned onto 29th Street, Marks stated, "There's [the victim's] car right there." King said that he saw Butler standing on the sidewalk by the car and that as they drove by and were almost even with the victim's car, he shot at Butler. King said he heard approximately five shots from the backseat of the car. When they got to the end of the block, Marks stated, "I seen him fall."

At trial, Marks testified that his friend Shanklin had moved to 28th and Laurel Streets about 3 months before the shooting. Marks and his friends had had problems with the victim and his friends. Marks testified that while riding around on the night of the shooting, Stewart stopped and got out of the car to talk to someone on Ellison Street and that after Stewart got back into the car, they turned north onto 29th Street, where Stewart asked a woman walking by if she was "looking." Marks said that he saw the victim's car and saw people standing by it. As they started driving toward the victim's car, King started firing, so Marks took the .32 and the .38 and opened fire. Marks said that after he saw the victim's car, he figured that his group would be shot at. He claimed that it was dark and that he did not see anyone in the area where he was aiming. He stated that after King started firing, he saw people by the car run back toward the sidewalk and the house, and he claimed that he was not thinking, but was just shooting at the car. As they drove away, Marks looked back and said, "Somebody fell." He thought he might have accidentally hit someone.

Jeanette Stewart, the woman spoken to by Wade Stewart, testified that Stewart's car drove by slowly, and then she heard gunshots, but did not see from where they came. She saw the victim and Butler in the street near the left rear of the car. Just before the shooting, she heard someone in Stewart's car say, "There he is."

## ASSIGNMENTS OF ERROR

Marks claims that the evidence was insufficient as a matter of law to support the jury's verdict finding him guilty of first degree murder and that the district court erred in not giving him

 

credit for 232 days spent in custody.

## ANALYSIS

Marks argues the evidence was insufficient to prove that the killing was premeditated. Neb. Rev. Stat. § 28–303 (Reissue 1989) provides: "A person commits murder in the first degree if he kills another person (1) purposely and with deliberate and premeditated malice . . . ." In *State v. Lyle*, 245 Neb. 354, 358–59, 513 N.W.2d 293, 299 (1994), we defined the meaning of § 28–303(1) as follows:

> In order to be guilty of first degree murder, one must have killed purposely and with deliberate and premeditated malice. . . . Malice is that condition of the mind which is manifested by the intentional doing of a wrongful act without just cause or excuse. . . . Deliberate malice and premeditated malice are separate and distinct elements of the crime of murder in the first degree. . . . Deliberate means not suddenly, not rashly; but deliberation requires that the defendant considered the probable consequences of his or her act before doing the act. . . .
>
> Premeditated means to have formed a design to commit an act before it is done. One kills with premeditated malice if, before the act causing the death occurs, one has formed the intent or determined to kill the victim without legal justification. . . . No particular length of time for premeditation is required, provided that the intent to kill is formed before the act is committed and not simultaneously with the act that caused the death. . . . The time required to establish premeditation may be of the shortest possible duration and may be so short that it is instantaneous, and the design or purpose to kill may be formed upon premeditation and deliberation at any moment before the homicide is committed. . . .

(Citations omitted.)

On a claim of insufficiency of the evidence, the appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the appellate court set aside a guilty verdict as unsupported by

evidence beyond a reasonable doubt. *State v. One 1985 Mercedes 190D Automobile*, 247 Neb. 335, 526 N.W.2d 657 (1995). In reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or reweigh the evidence. Such matters are for the finder of fact, and the verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *Id.*; *State v. Null*, 247 Neb. 192, 526 N.W.2d 220 (1995).

Marks' basic argument is that there was no evidence that he planned to kill the victim. As the issue is framed by Marks' argument, the question is whether Marks' sudden shooting in the direction of two individuals at a distance of 20 to 30 feet with a .32–caliber gun and a .38–caliber gun is sufficient to establish that Marks killed the victim with deliberate and premeditated malice. Marks claims that because he testified that he merely started shooting without thinking and did not give any consideration to the consequences and because he denied that he planned to kill any particular individual, the evidence is insufficient to establish that the killing was premeditated. We disagree.

> The time required to establish premeditation may be of the shortest possible duration and may be so short that it is instantaneous, and the design or purpose to kill may be formed upon premeditation and deliberation at any moment before the homicide is committed. *State v. Drinkwalter*, [242 Neb. 40, 493 N.W.2d 319 (1992)]; *State v. Batiste*, [231 Neb. 481, 437 N.W.2d 125 (1989)]; *State v. Nokes*, 192 Neb. 844, 224 N.W.2d 776 (1975)
>
> . . . .

*State v. Lyle*, 245 Neb. 354, 359, 513 N.W.2d 293, 299 (1994). In *State v. Batiste*, 231 Neb. 481, 437 N.W.2d 125 (1989), this court held that a question of premeditation is for the jury to decide. It is entirely reasonable for the jury to have believed beyond a reasonable doubt that Marks acted with premeditation. Marks had fired shots at the victim's car 3 or 4 weeks prior to this incident. Two or three weeks prior to the incident, Marks had stated that he wanted to "get" the victim in retaliation for

a prior drive–by shooting. Marks carried two guns with him on the evening of the shooting. He went to 29th and Ellison Streets and was prepared to begin shooting when he saw the victim's car because he believed the victim might shoot at him. Marks began shooting when he recognized the victim's car. The victim was killed when a .38–caliber bullet entered his right temple, traveled through his brain, and exited the left side of the skull, lodging between the skull and the skin.

At trial, Marks testified that his group noticed the victim's car when they were 20 to 25 feet away and that he saw two people standing by the car. He was not sure who the people were, but while Stewart drove toward them, Marks began firing when King did. A couple of seconds elapsed between the time Marks first saw the victim's car and the time the shooting started. Marks stated: "As soon as I seen [King] firing, I seen people running. The car was right there, and I started firing." Marks stated that he was firing .32–caliber and .38–caliber guns and that he was aiming at the car. He claimed that after the firing started, he saw two people running away and that they were not in the area where he was firing.

Upon our review of the record, we find that the evidence is sufficient to establish the elements of first degree murder. "The intent involved in an actor's conduct is a mental process and may be inferred from the conduct itself; the actor's language, if any, in reference to the conduct; and the circumstances surrounding the conduct." *State v. Thompson*, 244 Neb. 375, 399, 507 N.W.2d 253, 270 (1993). Accord *State v. Russell*, 243 Neb. 106, 497 N.W.2d 393 (1993).

Deliberate means not suddenly, not rashly; but deliberation requires that the defendant considered the probable consequences of his or her act before doing the act. *State v. Lyle, supra*. Marks had shot at the victim's car 3 or 4 weeks prior to this incident. He had stated that he had a "strap" in case he and his friends got into some "dirt." The evidence was sufficient to establish beyond a reasonable doubt that Marks' actions were deliberate.

One kills with premeditated malice if, before the act causing the death occurs, one has formed the intent or determined to kill the victim without legal justification. *Id*. The intent to kill may

be inferred, sufficient to support a murder conviction, from the defendant's deliberate use of a deadly weapon in a manner likely to cause death. See, *State v. Russell, supra*; *State v. Rokus*, 240 Neb. 613, 483 N.W.2d 149 (1992). The evidence was undisputed that Marks fired two deadly weapons toward the victim's car and that after the firing started, Marks saw two people running away. The intent to kill may be inferred from Marks' firing of these deadly weapons. There was sufficient evidence to support the jury's finding that Marks was guilty of murder in the first degree for the death of the victim. Marks' claim that the evidence is insufficient has no merit.

Marks argues that the trial court erred in failing to give him credit for time served. Marks was sentenced to life imprisonment on the first degree murder conviction. He was sentenced to 5 to 10 years' imprisonment on the use of a firearm to commit a felony conviction, which sentence was to be served consecutive to the life sentence. The court made a finding that Marks had been in custody for 232 days, but gave no credit for time served.

Using a firearm to commit a felony is a separate and distinct offense from the felony being committed, and sentences imposed for using a firearm to commit a felony shall be consecutive to any other sentence imposed. Neb. Rev. Stat. § 28-1205(3) (Reissue 1989). See *State v. Sorenson*, 247 Neb. 567, 529 N.W.2d 42 (1995). Under Neb. Rev. Stat. § 83-1,106(1) (Reissue 1994), an offender is to be given credit against the maximum term and any minimum term for time spent in custody prior to trial, during trial, pending sentence, pending the resolution of an appeal, and prior to the delivery of the offender to the correctional facility.

In *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994), we held that upon being sentenced to life imprisonment upon a conviction of first degree murder, a defendant is not entitled to credit for time in custodial detention pending trial and sentence. However, we determined that when the defendant receives a sentence consecutive to the life sentence that has a maximum and minimum term, the defendant is entitled to receive credit for the time served against the consecutive sentence. The State does not dispute Marks' contention, and we find that the district

court should have given Marks credit for the time that he spent in custody, such credit to be applied against his consecutive sentence for use of a firearm to commit a felony.

A judge in sentencing is required to separately determine, state, and grant the amount of credit on the defendant's sentence to which the defendant is entitled under § 83-1,106(1). *State v. Groff*, 247 Neb. 586, 529 N.W.2d 50 (1995). Section 83-1,106(1) requires that the defendant also receive credit for time served pending the resolution of an appeal. We therefore vacate the sentence imposed for use of a firearm to commit a felony and remand the cause to the district court with directions to resentence Marks and give him credit for time served against the firearm conviction, including the time spent in resolution of this appeal.

## CONCLUSION

The evidence was sufficient to support the jury's verdicts, and they are affirmed. Marks' sentence for use of a firearm to commit a felony is vacated, and the cause is remanded to the district court with directions to resentence Marks and give him credit for time served.

AFFIRMED IN PART, AND IN PART VACATED
AND REMANDED WITH DIRECTIONS.