STATE OF NEBRASKA, APPELLEE, V.
MARTIN L. ANDERSON, APPELLANT.
564 N.W.2d 581

Filed June 20, 1997.   No. S-96-546.

Andrei G. Howze for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

GERRARD, J.

A jury convicted appellant, Martin L. Anderson, of second degree murder and use of a firearm in the commission of a felony. It is from this conviction that Anderson appeals, claiming prejudicial jury misconduct. Anderson also appeals from the

court's sentence, claiming error due to the court's failure to give him credit for time served. Finding no prejudicial error, we affirm.

## FACTUAL BACKGROUND

In 1988, Anderson pled guilty to an amended information charging him with second degree murder in connection with the shooting death of Steven Rody. On August 25, 1995, the district court granted Anderson's petition for postconviction relief based on the failure of the State to include the element of malice in the charging information. The original information charging Anderson with first degree murder was reinstated. Trial of this cause began on January 29, 1996.

On January 31, during presentation of the State's case in chief, the Omaha World-Herald published an article in regard to Anderson's retrial. It came to the attention of Anderson's counsel that this newspaper article was in the jury room. The headline of the newspaper article read, "Witnesses Recall 1988 Parking-Lot Slaying." A subhead below the headline further informed the reader, "1st-Degree Murder Charged in Retrial." The article itself began with a short description of the crime, including the identities of the victim and the defendant. The fifth and sixth paragraphs of the article then recited:

> Anderson received a life sentence in 1988 for second-degree murder. He was granted new court proceedings under a 1994 decision by the Nebraska Supreme Court.
>
> The Supreme Court has ruled that the definition of second-degree murder must include malice. Individuals convicted of a second-degree murder charge that did not include malice can request retrials and resentencings.

The remainder of the article summarized the in-court testimony of four witnesses for the State.

Anderson's counsel asked the trial judge to inquire of the jurors whether they had been exposed to the article and, if so, to question the jurors individually to determine the extent of any prejudice to Anderson. The judge agreed to question the jurors as a whole and to question individually those who had knowledge of the article. During the course of the individual questioning, the trial judge agreed to Anderson's request to question all 12 jurors and the 2 alternates.

The trial judge initially asked the jurors as a group whether they had been exposed to media publicity concerning the trial. Only two jurors raised their hands. The judge then asked whether they had heard of or talked to anyone concerning a newspaper article. Two more jurors raised their hands. After further inquiry, two more jurors admitted knowing something of the article. Thus, when questioned as a group, only six jurors admitted having knowledge of the newspaper account.

Individual questioning of the jurors by the trial court and both counsel disclosed the following: Eight jurors had either heard a conversation about the newspaper article or engaged in a conversation about the newspaper article. One juror claimed to have heard a rumor about jurors reading a newspaper article concerning the trial. Five jurors told the court that they did not hear anyone talk about the newspaper article and knew nothing about the substance of the article itself.

Juror Thomas R. testified that he went to his place of employment before appearing for jury duty that morning. While at work, he saw the newspaper headline concerning Anderson's trial. Thomas R. said that he remembered the court's admonition; thus, he did not read the article itself. As for the headline, Thomas R. testified that he could recall only that it reported something about the year 1988. When Thomas R. was specifically asked whether he mentioned the article in the jury room, he replied that he glanced through the paper and "didn't say nothing. I just kind of pointed out the '88 there." Thomas R. said that no other jurors made any comments about the article and that he did not hear anyone say that they had read the paper that morning.

Thomas R.'s testimony was contradicted by several of the jurors with knowledge of the article. Juror Todd N. admitted bringing the newspaper to the jury room. He admitted reading the headline but not the substance of the article. When asked whether he told anybody else in the jury room about the article, Todd N. replied, "There were comments in the jury room that there was an article in the paper." Todd N. testified that the substance of the article was never read. Todd N. said that two or three jurors made comments about the article. Specifically, he said that he and Thomas R. made comments and that there may

have been one other comment by a juror, but that he did not know who that juror was.

Juror Carol L. testified that she did not read or even look at the article, but knew something of its content because Thomas R. had held the newspaper up and read part of the headline out loud. She said that the portion Thomas R. read indicated that the current trial was a retrial. Carol L. said that she told Thomas R. and the others that they should not be reading any newspaper article concerning the case. Carol L. said that after Thomas R.'s display of the newspaper, the conversation then turned to a discussion concerning who in the courtroom was a reporter.

Carol L. testified that the jurors who were talking about the article appeared to know that the article pertained to the case on which they were sitting. Carol L. could not recall all of the jurors who were involved in the discussion concerning the article, but did say that Thomas R. was involved as well as two elderly men. Carol L. did not know the names of these elderly men, but said that one was the juror questioned by the court just before her. That juror was Ralph S. Ralph S. had testified that he did not read about the case in the newspaper but that there was some talk about a newspaper article in the jury room that morning. Ralph S. claimed to not know which jurors were talking about the article and contended that he was not paying attention.

Juror George D. testified that he read the headline of the article and that someone was showing the article to the jurors as a group. George D. said that the headline informed the jurors that the case was a retrial. According to George D., some jurors became suspicious about what was going on and wondered if this was a second trial.

Juror Michelle M. testified that she did not read the newspaper article but that she overheard a conversation in which she thought that Thomas R. said to Todd N. something to the effect that Thomas R. had started to read the article but did not finish it. However, Michelle M. was not sure whether this comment was even in reference to the article about Anderson's trial.

After the court and both counsel concluded the individual questioning of the jurors, Anderson's counsel moved for a mistrial. The court overruled the motion, reasoning that no juror had,

in fact, read the newspaper article and that the mere mention of the fact that the instant trial was a retrial was not prejudicial to Anderson's right to receive a fair trial. Anderson then moved the court to sequester the jury for the remainder of the trial. The court agreed to sequester the jury commencing with their deliberations and agreed to specifically admonish the jury in regard to media coverage. Anderson also made a motion to strike jurors Thomas R. and Todd N., which the trial court overruled.

The State went on to present the remainder of its case. Anderson then presented his case. Anderson's counsel did not submit to the court a specific instruction concerning the newspaper article. Of the jury instructions given by the court, instruction No. 2 in pertinent part told the jurors that "[t]he following things are not evidence: . . . 4. Anything you may have seen or heard about this case outside the courtroom."

The jury convicted Anderson of second degree murder and use of a firearm in the commission of a felony. The court sentenced Anderson to a term of life imprisonment in regard to the second degree murder charge and 10 years' imprisonment in regard to the use of a weapon charge. The court gave Anderson credit for the 8 years he has already served following his first conviction in regard to the use of a weapon charge, but did not give Anderson credit for time served with regard to the life sentence for second degree murder.

## STANDARD OF REVIEW

The decision whether to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent a showing of abuse of discretion. *State v. Woods*, 249 Neb. 138, 542 N.W.2d 410 (1996); *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994).

## ASSIGNMENTS OF ERROR

Anderson contends that the trial court erred in (1) overruling his motion for mistrial and (2) not giving him credit for time served in regard to his second degree murder conviction.

## ANALYSIS

*Jury Misconduct.*

We are guided by the rule that in order for a verdict to be set aside because of the prejudicial effect of newspaper accounts on

jurors, there must be evidence presented that the jurors read newspaper accounts and that the accounts were unfair or prejudicial to the defendant. See *State v. Bautista*, 193 Neb. 476, 227 N.W.2d 835 (1975). We have held that in order for jury misconduct to be the basis for a new trial, the misconduct must not only occur but it must be prejudicial to the defendant. *State v. West*, 217 Neb. 389, 350 N.W.2d 512 (1984).

Anderson asserts that misconduct and prejudice are established on the record before this court. The State, on the other hand, contends that it was Anderson's burden to show "by clear and convincing evidence that he was prejudiced" by the juror's misconduct. Brief for appellee at 6, citing *State v. Owen*, 2 Neb. App. 195, 508 N.W.2d 299 (1993).

We must first address the proper evidentiary standard that a party need satisfy when a trial court considers a motion for mistrial or a motion for new trial in regard to a claim of jury misconduct in a criminal case. In *State v. Steinmark*, 201 Neb. 200, 204-05, 266 N.W.2d 751, 754 (1978), we first mapped out the procedure due a defendant claiming prejudice in a criminal case:

> When an allegation of misconduct is made, and is supported by a showing which tends to prove that serious misconduct occurred, the trial court should conduct an evidentiary hearing to determine whether the alleged misconduct actually occurred. If it occurred, the trial court must then determine whether it was prejudicial to the extent the defendant was denied a fair trial. If the trial court determines that the misconduct did not occur, or that it was not prejudicial, adequate findings should be made so that the determination may be reviewed.

After *Steinmark*, in *State v. McDonald*, 230 Neb. 85, 430 N.W.2d 282 (1988), the defendant alleged jury misconduct in regard to a discussion of the case between two jurors seated in the courtroom while the judge and counsel for both parties were occupied in chambers. This discussion was overheard by defense counsel's wife. We reiterated the rule that, in a criminal case, where the jury misconduct involves juror behavior only, the burden to establish prejudice rests on the party claiming the misconduct. *Id.*

In *State v. Owen, supra*, a case involving jury misconduct in regard to media influence during the jury's deliberations, the

Nebraska Court of Appeals stated that the party claiming jury misconduct must "show by clear and convincing evidence that prejudice has occurred." *Id.* at 202, 508 N.W.2d at 303. However, the *Owen* court relied on *Hunt v. Methodist Hosp.*, 240 Neb. 838, 485 N.W.2d 737 (1992), a civil case which cited *Ellis v. Far-Mar-Co*, 215 Neb. 736, 340 N.W.2d 423 (1983), for the proposition that a party claiming jury misconduct must show by clear and convincing evidence that *prejudice* has occurred.

In *Ellis v. Far-Mar-Co, supra*, a juror, after the first day of deliberations, telephoned a witness who had testified at trial and asked him some questions concerning the case. We stated that "[w]hen a new trial is sought for juror misconduct, the finding of the trial court will not be set aside unless the *evidence of misconduct* is clear and convincing." (Emphasis supplied.) *Id.* at 744, 340 N.W.2d at 427. Thus, evidence of jury misconduct, not of prejudice, must be established by clear and convincing evidence in a civil case.

We find no constitutionally persuasive argument or authority for the proposition that a criminal defendant must satisfy a heightened evidentiary standard, such as clear and convincing evidence, to show either (1) the existence of jury misconduct or (2) that *prejudice* has occurred in cases involving jury misconduct among only the jurors. We therefore hold that a criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance of the evidence, (1) the existence of jury misconduct and (2) that such misconduct was prejudicial to the extent that the defendant was denied a fair trial. Insofar as the Court of Appeals, in *State v. Owen, supra*, announced a heightened evidentiary standard for proving *prejudice* in criminal jury misconduct cases, it is overruled.

That being so, we review the trial court's findings, mindful that its ruling on Anderson's motion for mistrial will be upheld on appeal absent a showing of abuse of discretion. See *State v. Woods*, 249 Neb. 138, 542 N.W.2d 410 (1996). We do not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognize the trial court as the finder of fact and take into consideration that it observed the jurors when they testified. With regard to whether jury misconduct occurred and, if so,

whether the misconduct was prejudicial to the defendant, the trial court stated in its oral findings:

> I think the first threshold question is did they read [the article], and my understanding of the record is that no one read the article except for the headline or headlines. But I think we have two by my count . . . that said — heard the term or read the term, heard the term "re-trial."
>
> So, I feel that the threshold question, and I appreciate it's a question of credibility of the jurors, but it was my impression that they were taking their situation seriously and it's my opinion that they were being honest in what they were saying. And so I think technically on that one, based on the *West* case . . . that we have not reached that. So, on that alone I feel the motion should be overruled. But also as to the question of prejudicial [sic], if we take the headline, which certainly was read at least by one or two and maybe heard by more than that, I don't think that that reaches the point of prejudice, either, because certainly it's the . . . heart of the article that would be considered to be prejudicial to the defendant.
>
> So on that basis I'm going to overrule the motion for a mistrial.

To the extent that the trial court's findings can be construed to mean that no jury misconduct occurred, such a finding is untenable and constitutes an abuse of discretion. Three jurors admitted reading at least the headline or subhead and discussing the contents of the headline or subhead with other jurors in the jury room. Five other jurors stated that they were informed to some extent of the content of the headline or subhead by other jurors. Insofar as certain jurors read at least a headline or subhead regarding the instant case and then discussed this matter with other jurors prior to hearing all evidence and being instructed on the law, such conduct clearly violated the specific admonition of the court and constitutes jury misconduct. However, our inquiry does not end here.

We must next determine whether that portion of the article which was in fact read by the jurors prejudiced Anderson's right to a fair trial. The trial court found that at least the headline or subhead of the offending newspaper article was read by some of

the jurors. However, the court found that no juror had read the body of the article itself, and the record supports such a finding. No juror testified that he or she read any more than the headline or subhead. Only Michelle M. testified that she thought that Thomas R. may have said that he started to read the article but did not finish it. However, Michelle M. also stated that she was not sure whether Thomas R.'s comment was even in reference to the newspaper account of Anderson's trial. Thus, having determined that the record supports the trial court's finding that no juror had read the body of the article, the inquiry now shifts to whether the newspaper headline or subhead read by the jurors was prejudicial to Anderson's right to a fair and impartial jury.

We are mindful that extraneous material or information considered by a jury may be deemed prejudicial without proof of actual prejudice if the material or information relates to an issue submitted to the jury and there is a reasonable possibility that the extraneous material or information affected the verdict to the litigant's detriment. *Hartley v. Guthmann*, 248 Neb. 131, 532 N.W.2d 331 (1995); *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993). Even when we examine Anderson's appeal in terms of inferentially established prejudice, it is clear that not every instance of a publication made available and read by jurors warrants a new trial. See, *Byrd v. Com.*, 825 S.W.2d 272 (Ky. 1992); *People v. Lampson*, 6 Ill. App. 3d 1099, 286 N.E.2d 358 (1972).

In the case at bar, the Omaha World-Herald headline read, "Witnesses Recall 1988 Parking-Lot Slaying," and the subhead read, "1st-Degree Murder Charged in Retrial." While there is no question that the fact of Anderson's prior conviction contained in the fifth paragraph of the article is inadmissible in evidence and highly prejudicial, the trial court made a factual finding that none of the jurors read the article except for the headline or subhead.

In such situations, it is clear that the determination whether to grant a mistrial rests not only on what the jurors say on interrogation, but also upon the nature of the published material, together with all other facts and circumstances in the record. The determination to be made by the trial court calls for the exercise of judicial discretion under the circumstances.

The examination of the jurors in this cause by the trial court and both counsel failed to disclose either directly or inferentially that any of the jurors had been prejudiced by their exposure to the headline or subhead in question. Even though three of the jurors acknowledged that the subhead stated that the instant cause was a retrial, none of the jurors exhibited any knowledge as to the circumstances of the retrial or whether the first trial was terminated prior to its conclusion or was reversed on appeal. The mere use of the word retrial, without further explanation, does not automatically connote that a defendant was convicted of particular crimes in a prior trial, nor does it necessarily mean that a prior trial had reached its completion. Simply put, none of the jurors testified that they had any knowledge regarding a prior conviction or as to why Anderson was being granted a new trial.

At the conclusion of the interrogation of the jurors, they were admonished by the trial court that they were to consider only evidence adduced in the case and not listen to any conversations about the case, including watching television or reading media reports about the case.

It has long been the theory of our system of justice that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print. See *Patterson v. Colorado*, 205 U.S. 454, 27 S. Ct. 556, 51 L. Ed. 879 (1907). We conclude, after thoroughly reviewing the record and the testimony of the jurors, that the trial court did not err in determining that Anderson's right to a fair and impartial jury was not prejudiced due to the exposure of some jurors to the subject newspaper headline or subhead.

Therefore, Anderson's first assignment of error is without merit, since we determine that the trial court did not abuse its discretion in refusing to grant a mistrial under the circumstances.

*Credit for Prior Sentence.*

Anderson asserts that Neb. Rev. Stat. § 83-1,106(2) (Reissue 1994) mandates that the sentencing court give him credit against his current life sentence for all time served in regard to

his prior life sentence, based on the same conduct. Section 83-1,106(2) provides in part: "Credit against the maximum term and any minimum term shall be given to an offender for time spent in custody under a prior sentence if he or she is later reprosecuted and resentenced for the same offense or for another offense based on the same conduct."

We rejected this same argument in *State v. Rust*, 247 Neb. 503, 528 N.W.2d 320 (1995). Therein, we quoted our reasoning in *State v. Lynch*, 215 Neb. 528, 340 N.W.2d 128 (1983).

> The purpose of credit under § 83-1,106 "is to avoid the situation where one convicted of a crime is incarcerated for a period greater than the maximum term of years pre-scribed as punishment for the particular offense. . . . By its very nature [a life] sentence is indefinite. . . . In the case of a life sentence, it is impossible to impose punishment exceeding the term prescribed by statute."

*State v. Rust*, 247 Neb. at 515-16, 528 N.W.2d at 328.

Anderson has not forwarded an argument which would give us cause to reexamine our reasoning in *State v. Rust*. A criminal defendant convicted of first or second degree murder and sen-tenced to life imprisonment is not entitled to credit for time spent in custodial detention pending trial and sentence. However, when the defendant receives a sentence consecutive to the life sentence which carries a maximum and minimum term, the defendant is entitled to receive credit for the time served against the consecutive sentence. *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996); *State v. Marks*, 248 Neb. 592, 537 N.W.2d 339 (1995).

Accordingly, the district court properly credited Anderson for time served in regard to his conviction for the use of a firearm in the commission of a felony and properly rejected crediting Anderson for time served against the life sentence in regard to his conviction for second degree murder.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

CAPORALE, J., concurring.

Although I consider suspect the district court's finding that no juror read beyond the headline and subhead of the article, I cannot on the record presented conclude that it is clearly wrong. Thus, I accept that this case must be decided on the basis that no juror read the portions of the article revealing that the defendant, Martin L. Anderson, had previously been convicted of and received a life sentence for second degree murder on account of the events in question and that the only information imparted by the article to the jury is that it was sitting in judgment of a "retrial."

The common definition of retrial is simply that it is a second trial. Webster's Third New International Dictionary, Unabridged 1940 (1993). See, also, Black's Law Dictionary 1317 (6th ed. 1990), defining the word as a "new trial of an action which has already been once tried." Thus, in the absence of Anderson's establishing that the word meant something else to any juror, such as that he had previously been convicted, he failed to sustain his burden of proving that he was prejudiced by the misconduct of any juror. See *State v. McDonald*, 230 Neb. 85, 430 N.W.2d 282 (1988) (where jury misconduct involves juror behavior only, burden to establish prejudice rests on party claiming misconduct). See, also, *State v. West*, 217 Neb. 389, 350 N.W.2d 512 (1984).

Nevertheless, I cannot help but wonder where the bailiff was while the jury was assembling and how the newspaper made its way into the jury room. The fact that prejudice was not demonstrated in this instance does not mean that under similar circumstances none will be demonstrated in a future case.