STATE OF NEBRASKA, APPELLEE, V. JAMES OSCHE, APPELLANT.
576 N.W. 2d 204

Filed March 10, 1998. No. A-97-683.

Dave B. Eubanks, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

MILLER-LERMAN, Chief Judge, and SIEVERS and INBODY, Judges.

SIEVERS, Judge.

## INTRODUCTION

This opinion addresses the issue of whether a defendant should be granted a new trial when a juror professes to a non-juror, during a morning recess and before submission of the case to the jury, that the defendant is " 'guilty as hell.' "

## BACKGROUND

James Osche was charged by information in the district court for Box Butte County, Nebraska, on three counts of theft of

movable property pursuant to Neb. Rev. Stat. §§ 28-511 and 28-518 (Reissue 1995). The first count, designated as a Class III felony in the information, alleged that on or about July 31, 1994, Osche stole cash in the amount of $2,145.56 from "Friends of the Museum." The second count, designated as a Class IV felony, alleged that on or about November 16, 1995, Osche stole cash in the amount of $750 from Alliance Parks. The third count, designated as a Class II misdemeanor, alleged that on or about January 26, 1996, Osche stole cash in the amount of $130 from Alliance Parks. Specific facts about the crimes are not important to the issues raised on appeal.

A jury trial commenced on April 28, 1997, and continued to April 29. On April 30, the jury found Osche guilty of counts one and three, but he was acquitted of count two, the Class IV felony charge. Osche filed his motion for new trial on May 9, alleging, among other things, misconduct of the jury. More specifically, Osche argued that one of the jurors, Bill Shores, "disregarded the Court's admonition and, during the middle of the trial, expressed his opinion of the outcome [of] the case and spoke to a person not on the jury about the case." The affidavit of Thomas G. Dieriex, designated as "exhibit A," was incorporated in the motion for new trial by reference. Dieriex's affidavit states, in pertinent part:

The Affiant was at the Box Butte County Court House on Tuesday, April 29, 1997 . . . .

. . . On April 29, 1997, the trial of State of Nebraska versus Jim Osche was in progress. During the morning break of that trial, the Affiant had contact with, one of the jurors on the Osche case, Bill Shores . . . . Affiant has known Mr. Shores for approximately three years. During this break from the Osche trial, Shores stated to Affiant, "He is guilty as hell" referring to Jim Osche. The Affiant responded by saying, "How can you say that? You haven't heard all of the evidence." Mr. Shores then went on to talk about Mr. Osche's demeanor and physical appearance while on the witness stand.

. . . .

. . . It was clear to the Affiant that Mr. Shores had formed an opinion about the Defendant's guilt before the end of the case . . . .

■ In a motion in limine dated June 2, 1997, the State requested that the court prohibit Dieriex from testifying in support of Osche's motion for new trial. The State argued that because Osche was attacking the validity of the jury verdict by alleging juror misconduct, Neb. Rev. Stat. § 27-606 (Reissue 1995) was controlling. Section 27-606 provides in part:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

The State argued in its motion in limine that § 27-606 barred Osche from presenting the affidavit of Dieriex. The State argued that Osche did not allege that extraneous prejudicial information was improperly brought to the jury's attention or that any outside influence was improperly brought to bear upon any juror, the two things a juror may testify about under § 27-606.

A hearing was held on Osche's motion for new trial on June 5, 1997. The court sustained the State's motion in limine but noted that "the court can always reverse its decision in regard to the Motion in Limine and receive the information that comes before me on the offer of proof . . . ." The court proceeded to receive the testimony of Dieriex (substantially as detailed in exhibit A) as an offer of proof. At this same hearing, the court heard testimony from Theresa Parker, the jury foreperson. She testified that Shores "would vote yes or no but he wouldn't — he never added anything to what was being discussed and he didn't take part in the discussions."

On June 24, 1997, the court found that there had been juror misconduct based on the comment Shores had made to Dieriex but that no improper information had gone to the jury and the

evidence did not warrant a new trial. In making this decision, the court stated: "[T]he Motion in Limine is overruled for the record and the court considered the defendant's offer of proof." The State did not cross-appeal the trial court's overruling of the motion in limine.

Osche was sentenced to a term of probation for a period of 3 years with respect to count one, the Class III felony. As part of his probation, Osche was ordered to make restitution in the amount of $2,145.56, payable in 1 year; to complete 200 hours of community service; and to pay a $1,000 fine. With regard to count three, the Class II misdemeanor, Osche was ordered to pay a fine of $500 and to make restitution of $130. Osche then appealed to this court.

## ASSIGNMENT OF ERROR

Osche assigns error to the district court for overruling his motion for new trial.

## STANDARD OF REVIEW

■ A motion for new trial on the basis of jury misconduct is addressed to the discretion of the trial court, and a ruling on the motion will not be disturbed on appeal absent an abuse of that discretion. See *State v. Boppre*, 243 Neb. 908, 503 N.W.2d 526 (1993).

## ANALYSIS

■ Osche's appeal claims that the district court should have granted him a new trial on the basis of jury misconduct. A criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance of the evidence, (1) the existence of jury misconduct and (2) that such misconduct was prejudicial to the extent that the defendant was denied a fair trial. *State v. Anderson*, 252 Neb. 675, 564 N.W.2d 581 (1997).

■ Proof of mere indiscretion in the conduct of a juror is not sufficient to avoid a verdict unless the proof establishes that his conduct was of such character that prejudice may be presumed. *Ellis v. Far-Mar-Co*, 215 Neb. 736, 340 N.W.2d 423 (1983). In a criminal case, misconduct involving an improper communication between a nonjuror and a juror gives rise to a rebuttable presumption of prejudice which the State has the bur-

den to overcome. *State v. McDonald*, 230 Neb. 85, 430 N.W.2d 282 (1988).

There is undisputed evidence that contrary to the trial judge's repeated admonitions to the jurors not to discuss the case with anyone and not to determine the guilt or innocence of the defendant before submission of the case, Shores said that Osche was " 'guilty as hell' " to a nonjuror during a recess. Based on this evidence, the trial court found that juror misconduct had occurred and we agree. Thus, we see the question as whether the presumption of prejudice from the improper communication has been overcome. The district court found, in effect, that the presumption had been overcome by finding that Osche was not prejudiced by the communication:

> I think it's very clear that no improper information went to that jury. One of the jurors made a comment in regard to what his thoughts might have been at that time but there's absolutely no evidence whatsoever that any improper evidence was before this jury at the time they considered their verdict.
>
> I'm sure that when jurors sit and listen to a trial, they may make up their mind or have an idea of what they want to do at anytime during the trial before it's submitted to them but with the admonition of the court they're to go in and consider the evidence and make their decision, and I just don't think that the evidence submitted warrants granting a new trial . . . .

While jurors are instructed to withhold their final judgment until the case has been submitted for a decision, the production of evidence is designed to produce a response from each juror. The response sought is the mental conclusion that the evidence tends to show guilt or innocence. To believe that the evidential presentation, including seeing witnesses actually testifying and being cross-examined, makes no impact and that jurors form no opinion about a defendant's guilt or innocence until after formal submission of the case is simply unrealistic. Human nature is otherwise; we typically respond to information when it is presented. As evidence is produced in a criminal trial, the juror forms impressions which are later used in reaching a final decision. These impressions may be altered or confirmed based on

the evidence, the arguments of counsel, and the instructions to the jury; however, the impressions exist throughout the entire trial. See *Trimble v. State*, 118 Neb. 267, 274, 224 N.W. 274, 276 (1929) (rejecting claim for new trial when juror announced, " 'I had my mind made up before the trial was ended' "). Unfortunately, Shores was unable to control his urge to share his opinion of Osche with someone. But he did not share it with any other juror, and thus, the jury pool was not poisoned by Shores' lack of discretion.

In *State v. LaFera*, 42 N.J. 97, 108, 199 A.2d 630, 636 (1964), the trial court granted the defendant a new trial based on the fact that one of the jurors had reached a final verdict of guilt, " 'prior to the completion of the case, prior to the argument of counsel, and prior to the charge of the Court.' " The Supreme Court of New Jersey was "troubled by that thesis" and reversed, stating:

> A man inevitably reacts to what he hears as he hears it. He cannot avoid current impressions however much he wills to resist them. And although he may think those impressions are final, he cannot really know that they will endure. We may assume that many jurors begin the deliberations with strong convictions as to how the case should go, and then yield them to persuasion in the jury room. We instruct jurors to refrain from premature discussion in the hope that they will enter upon their deliberations with a maximum capacity to consider the views of others, but we cannot say a juror is guilty of misconduct because he reaches a conclusion before ideally he should.

*Id.* at 108-09, 199 A.2d at 636-37.

■ The Supreme Court of New Jersey set forth that when finding the presence of misconduct, "cases turn, not upon the proposition that a juror misbehaves if he reaches a premature conviction, but rather upon the circumstances in which he disclosed it." *Id.* at 109, 199 A.2d at 637. Nebraska law is similar. The determination as to whether juror misconduct is prejudicial so as to deny a defendant a fair trial is a question for the trial court, which is to be resolved upon the basis of an independent evaluation of all the circumstances in the case. *State v. Steinmark*, 201 Neb. 200, 266 N.W.2d 751 (1978).

The record reveals that at the start of the proceedings, the jurors were instructed not to make up their minds and not to discuss the case with anyone until the issues were submitted to them. Every time the jurors left the courtroom, the trial court repeated these admonishments. The court's final instructions to the jurors directed them to approach the task of determining the facts with an open mind and to "not hesitate to reexamine your own views and to change your mind if you are persuaded that you should." Although Shores clearly ignored the trial court's warning not to discuss the case with anyone, we cannot conclude that Shores had finally made up his mind prior to submission. In the latter regard, the evidence shows that if Shores thought Osche was " 'guilty as hell' " when he improperly spoke with Dieriex, at the least, he had not reached a final decision as to all counts at that time because he voted to acquit on count two. That vote is inconsistent with the allegation that Shores had decided the entire case on the morning of April 29, 1997, when he spoke to a nonjuror. Moreover, in judging whether prejudice to Osche occurred, we bear in mind that he was a silent juror—at least in the jury room. The testimony of the jury foreperson reveals that no members of the jury were informed of Shores' belief that Osche was " 'guilty as hell' " and that he was unusually quiet throughout deliberations, as he simply voted "yes or no." Based on the facts of this case, we are of the opinion that it was not an abuse of discretion to deny Osche a new trial because, although there was clearly an improper communication, the record shows that the presumption of prejudice to Osche has been overcome by the evidence in the record.

AFFIRMED.