STATE OF NEBRASKA, APPELLEE, V.
DARRELL E. HATWAN, APPELLANT.

303 N.W.2d 779

Filed March 27, 1981. No. 43397.

Murphy, Pederson, Piccolo & Anderson for appellant.

Paul L. Douglas, Attorney General, Mel Kammer-lohr, and Cheryl A. Netz for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The defendant, Darrell E. Hatwan, was charged in two counts with assault in the second degree. During the course of the pretrial proceedings, count I was reduced to third degree assault. Hatwan waived his right to a jury trial and consented to a trial before the court. He was found guilty by the court on both counts and sentenced to a term of 6 months in the county jail on the third degree assault charge and to 4 months in the county jail on the second degree charge, the terms to run concurrently. He has appealed to this court and makes the following assignments of error: (1) The trial court erred in finding that the second degree assault

was committed with the use of a dangerous weapon, that being an essential element of the crime. (2) The trial court erred in imposing a more severe sentence on the lesser charge than that imposed for the greater. (3) A new trial should have been granted because the defendant was represented during trial by inadequate, incompetent counsel. (4) The court erred in finding the defendant guilty of the second degree assault charge because there was no evidence that the victim suffered "serious bodily injury." The defendant's assignments are without merit and we affirm.

An understanding of the assignments requires that we examine the statutes defining the crimes charged and the evidence tending to support the State's case. Assault in the second degree is defined by Neb. Rev. Stat. § 28-309 (Reissue 1979) as follows: "(1) A person commits the offense of assault in the second degree if he:

"(a) Intentionally or knowingly causes bodily injury to another person with a dangerous instrument; or

"(b) Recklessly causes serious bodily injury to another person with a dangerous instrument."
Assault in the third degree is defined by Neb. Rev. Stat. § 28-310 (Reissue 1979): "(1) A person commits the offense of assault in the third degree if he:

"(a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or

"(b) Threatens another in a menacing manner."
Second degree assault is a Class IV felony; third degree assault, as charged in this case, is a Class II misdemeanor.

The defendant, Hatwan, on the date of the alleged offenses, was a lodger in the Uptown Motel in North Platte, Nebraska, which was then operated by Mina DeVriendt and her husband, A. E. DeVriendt. Hatwan, at the time of the offenses, was 42 years old, 6 feet tall, and weighed 175 pounds. Mrs. DeVriendt, the victim of the third degree assault, was 71 years old, 5 feet 4½ inches tall, and weighed 145 pounds. Her husband was

74 years old, 5 feet 8 inches in height, and weighed about 145 pounds.

The victim's version of the crime charged was that Hatwan came into the motel lobby at about 10:15 p.m. Mrs. DeVriendt heard him enter and went into the lobby from the couple's adjacent living quarters. Hatwan made a remark to her which indicated he had been assaulted or in a fight in a bar. He then claimed that he had been overcharged for his room at the motel. When Mrs. DeVriendt attempted to explain the room rate structure, he became loud and abusive. Mr. DeVriendt then entered the lobby.

As Mr. DeVriendt attempted to explain the room rates, Hatwan declared that he had not been given a receipt. Mr. DeVriendt told him to forget about it, he would write out a receipt that would show him paid through that night. He then wrote out the receipt and offered it to Hatwan.

After the receipt was written out, Mrs. DeVriendt felt they were in trouble and reached for the telephone behind the counter. Hatwan reached over the counter, grabbing the telephone receiver with one hand and grabbing Mrs. DeVriendt by the hair of her head with the other. He then threw Mrs. DeVriendt to the floor and jerked the telephone cord and receiver away from the telephone. He stepped back and began slinging the telephone receiver around his head. Mr. DeVriendt was then struck on the side of the head with the receiver, splitting his ear open.

Hatwan grabbed Mr. DeVriendt and threw him against the front of the office and then grabbed him a second time, throwing him into the corner against the south windows of the lobby.

Mrs. DeVriendt got up and came around from behind the counter. Hatwan knocked her down. She then crawled on her hands and knees into the corner, sitting next to her husband. Hatwan left shortly thereafter and Mrs. DeVriendt then called the police.

Hatwan denied the version as related by the

DeVriendts. He claimed the DeVriendts had attacked him and that the DeVriendts' injuries were suffered when DeVriendt fell while Hatwan was defending himself. The details of his testimony are not important since the trial court resolved the evidentiary conflicts against the accused.

We now examine the assignments of error in the order in which they were made. The court apparently found that with reference to the second degree charge, the telephone receiver was, in the manner in which it was used, a dangerous instrument within the meaning of the statute. The defendant argues that a dangerous instrument is only one which, by its very nature, is able or likely to inflict injury and includes such objects as guns, knives, axes, razors, and other instruments of like nature. He, therefore, argues that without regard to the mode of use, the telephone receiver cannot be a dangerous instrument, hence, the evidence did not support the conviction. He relies upon the dictionary definition of the two terms. We quote from his brief.

"An *'instrument'* is defined in Webster's Seventh New Collegiate Dictionary (1965) as a tool, utensil or implement. The word *'dangerous'* is likewise defined as something which is able or likely to inflict injury. Thus, a dangerous instrument is a tool or implement which is able to or likely to inflict injury. Examples of a dangerous instrument would be guns, knives, axes, razors, etc.

"The word 'instrument' is extremely broad in its definition and conceivably could include any object which is capable of being held by a person. However, not all *instruments* which are used in an assault case qualify as a *dangerous* instrument. The broad definition of instrument is limited by the term *'dangerous'*, which serves to qualify and restrict the tools or implements which are within the meaning of § 28-309. By its very nature, the tool, utensil or implement must be dangerous to be within the meaning of the statute. Therefore,

a *dangerous* instrument can only be one which by its very nature is able or likely to inflict injury." He cites no legal precedents directly in point.

Our criminal code does define the term deadly weapon, but it does not define the term dangerous instrument. Neb. Rev. Stat. § 28-109(7) (Reissue 1979). Neither, apparently, has this court had occasion to define the term dangerous instrument as it is used in the statutes in question. There are, however, jurisdictions in which the term "deadly or dangerous weapon" is a term used in statutes defining various crimes. In many of the cases invoking such terms, the courts have said they include not only instruments such as guns or knives but also other instrumentalities which, because of the manner of their use and the intention with which they are used, are dangerous. Some such cases are *Cummings v. State*, 384 N.E.2d 605 (Ind. 1979) (stapler used as a bludgeon); *Bald Eagle v. State of Oklahoma*, 355 P.2d 1015 (Okla. Crim. 1960) (beer bottle used as a weapon); *Berfield v. State*, 458 P.2d 1008 (Alaska 1969) (boots on feet used to kick face and head of victim). One case almost precisely in point is that of *Thomas v. State*, 524 P.2d 664 (Alaska 1974), where it was held that a telephone used as a club was a dangerous weapon.

In the case before us, the evidence accepted by the trier of fact indicated that the telephone receiver was intentionally swung by the attached cord in such a manner as to intentionally cause bodily injury. The physical principle involved in such use is essentially the same as that which David used when he killed Goliath. We hold that a dangerous instrument within the meaning of § 28-309 is any object which, because of its nature and the manner and intention of its use, is capable of inflicting bodily injury. It might, for example, be a piece of lumber, a hammer, or many other physical objects.

The defendant next contends that the evidence is insufficient to sustain the charge under § 28-309 because

Mr. DeVriendt, who was the victim of the second degree assault, received no serious bodily injury. We simply point out that the second degree assault here charged was, by the language of the information, brought under § 28-309 (1) (a). Causing serious bodily injury is not an element of the crime under that subsection of the statute.

We now turn to the claim that the court abused its discretion in imposing a larger sentence on the third degree assault than on the second degree assault. Second degree assault is a Class IV felony and is punishable by a maximum term of 5 years' imprisonment or a $10,000 fine, or both. No minimum sentence is specified. Neb. Rev. Stat. §§ 28-309 and 28-105 (Reissue 1979). Third degree assault, as charged in this case, is a Class II misdemeanor. Neb. Rev. Stat. §§ 28-310 and 28-106 (1) (Reissue 1979). The maximum punishment is 6 months' imprisonment or $1,000 fine, or both. Again, no minimum sentence is specified. Thus the defendant received the maximum sentence on the misdemeanor charge and a relatively light sentence on the felony charge. Because the sentences are concurrent, the defendant has not been hurt even if we were convinced that the alleged "disparity" was an abuse of discretion. We do not so regard it. Many penologists and learned persons who have written on crime and punishment point out that one of the justifications for punishment and, indeed, of the penal codes themselves is to express society's disapproval of the violation of its accepted moral standards. The victim of the misdemeanor charge in this case was a small, elderly woman. The assault was by a strong, young man. Most of mankind would regard this circumstance as an aggravating factor.

The defendant's attack on the competency of counsel is premised on the trial counsel's failure to subpoena hospital records and to call as witnesses medical personnel who attended the victims. The purpose of such evidence would have been to show that the victims

did not suffer "serious bodily injury." We have already pointed out that under §§ 28-309(1)(a) and 28-310 (1)(a) the infliction of serious bodily injury is not an element of the crime. The evidence disclosed that the victims did suffer bodily injury. Whether it was serious or not was immaterial to the proof of the charges. The claim of incompetence of counsel on this score is not supported by the record.

AFFIRMED.