STATE OF NEBRASKA, APPELLEE, v. JAMES R. AYRES, APPELLANT.
464 N.W.2d 316

Filed January 4, 1991.   No. 89-1145.

Kirk E. Naylor, Jr., for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

After a bench trial defendant-appellant, James R. Ayres, was adjudged guilty of second degree assault, in violation of Neb. Rev. Stat. § 28-309 (Reissue 1989); child abuse, in violation of Neb. Rev. Stat. § 28-707 (Reissue 1989); and using a weapon to commit a felony, in violation of Neb. Rev. Stat. § 28-1205 (Reissue 1989). He was sentenced to two terms of imprisonment for not less than 20 months nor more than 5 years on the assault and child abuse convictions, to be served concurrently, and to not less than 5 nor more than 10 years on the weapon conviction, to be served consecutively to the other sentences. Ayres does not challenge the adjudication of guilt on the child abuse charge, but appeals the adjudications of guilt on the assault and weapon charges. He asserts, with respect to those two offenses, that the district court erred in finding the evidence sufficient to support the adjudications. In addition, he asserts that each of the three sentences is excessive. We affirm in all respects.

The evidence presented at trial, when viewed in the light most favorable to the State, shows the following: Ayres was the guardian of the 10-year-old victim, Michael, and the victim's two older brothers, Scott and Billy. Ayres, the cousin of the

children's mother, was taking care of the children while their parents were imprisoned.

On the morning of May 30, 1988, Ayres returned to the trailer in which he and the children were living and discovered it in disarray, with a cabinet door knocked off its hinges. He asked Scott and Michael who had done the damage. Michael "swore to God" that he did not do it, which, based on his past experience, convinced Ayres of Michael's guilt. Ayres sent Scott to get the eldest brother, Billy, who was at a neighbor's.

When Billy arrived, Ayres was yelling at Michael. Ayres told Billy to fix the cabinet door, and then commenced beating Michael. This involved picking him up by the throat, tossing him against the cabinet, biting him on the chin, hitting him with fists, and kicking him with steel-toed boots. At some point Ayres started to hit Michael with a "spanking" board, described in the evidence as being approximately 12 inches long by 3 inches wide and about one-half of an inch thick, but which was actually 14 inches long and three-fourths of an inch thick. During the beating, the board broke lengthwise in two. According to Ayres, the beating lasted about 5 to 7 minutes. After he had finished beating the child, Ayres took him into the bathroom and forced him to eat a bar of soap. At this point Ayres' brother arrived, and the two left to rent a tuxedo for an upcoming wedding, leaving Michael alone with 15-year-old Billy. Later, two of Billy's friends stopped by and viewed Michael's injuries. A short time later, an unidentified person called the police.

The police took Michael to a hospital emergency room and arrested Ayres when he returned to the trailer. The physician who examined Michael testified that the child

> had numerous fresh bruises over a wide area of his body . . . . He had extensive fresh bruises across his buttocks on both sides, his anterior thighs, his cheek and jaw on both sides, his left ear, both on the ear itself and behind it. He also had bruises on his left forearm, his upper arm, his left shoulder, his right shoulder, and the back of his right hand.
>
> . . . .
>
> . . . He had some swelling about his jaw line and about

his buttocks, especially on the left side. I found this to be remarkable in that most bruises are still flush with the surface of skin; but swelling to the degree that I saw, meaning a quarter inch to a half an inch away from where the normal skin line would be, would indicate a more severe injury.

No bones were broken. Although there was evidence of large amounts of hemoglobin in his urine, tests revealed no damage to Michael's kidneys. Because of his injuries, Michael was ordered hospitalized overnight but was kept an additional day beyond that, waiting to be picked up by Child Protective Services.

As to the sufficiency of the evidence to support the assault and weapon charges, a person who "[i]ntentionally or knowingly causes bodily injury to another person with a dangerous instrument" is guilty of assault in the second degree. § 28-309(1)(a). A person who uses a firearm or any other deadly weapon to commit a felony is guilty of using a weapon to commit a felony. § 28-1205(1). A "deadly weapon" is any instrument which, in the manner used or intended to be used, is capable of producing death or serious bodily injury. Neb. Rev. Stat. § 28-109(7) (Reissue 1989).

Ayres claims the evidence was insufficient to support a determination that he "possessed the necessary mental state to conclude a 'deadly weapon' or 'dangerous instrument' was used to commit the crimes alleged." Brief for appellant at 10. It is Ayres' position that his assault and weapon convictions are error because he did not use the spanking board either in a manner which would produce serious bodily injury or death or with the intention of using it in such a manner.

The intent with which an act is performed may be inferred from the conduct itself, the actor's language in reference to the conduct, and the circumstances surrounding the incident. The existence of this state of mind is a question of fact and may be established through circumstantial evidence. *State v. Meyer, ante* p. 253, 460 N.W.2d 656 (1990); *State v. Peterson, ante* p. 450, 462 N.W.2d 423 (1990); *State v. Swigart,* 233 Neb. 517, 446 N.W.2d 216 (1989). When reviewing the sufficiency of the evidence to support a conviction in a criminal prosecution, it is

not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. These are all matters for the trier of fact, and a conviction must be sustained if, viewing the evidence in the light most favorable to the State, there is sufficient evidence to support the conviction. *State v. Fellman, post* p. 850, 464 N.W.2d 181 (1990); *State v. Johnson, post* p. 831, 464 N.W.2d 167 (1990); *State v. Clark, ante* p. 475, 461 N.W.2d 576 (1990). We will examine Ayres' claim as it relates to each charge separately.

We should begin by noting that, Ayres' position to the contrary notwithstanding, assault in the second degree does not require that the weapon in question be used in a manner, or with the intent, to cause serious bodily injury or death. As recited above, any person who intentionally or knowingly causes bodily injury to another by means of a dangerous instrument is guilty of assault in the second degree. This court has defined "dangerous instrument," for the purposes of this statute, as "any object which, because of its nature and the manner and intention of its use, is capable of inflicting bodily injury," *State v. Hatwan*, 208 Neb. 450, 454, 303 N.W.2d 779, 782 (1981), not serious bodily injury or death, just bodily injury. The intent mentioned in the definition of dangerous instrument is not an intent to cause bodily injury but, rather, an intent to use the instrument in the manner in which it was in fact used; hence, the language "manner and intention of its use." To read a specific intent requirement into the offense via this definition is to ignore the fact that second degree assault, like simple assault, is a general intent crime. *State v. Duis*, 207 Neb. 851, 301 N.W.2d 587 (1981).

With this in mind, we turn to the issue before us, namely, whether the object in question qualifies as a dangerous instrument. The manner in which the aforedescribed board was used was to repeatedly strike a 10-year-old child with sufficient force to split the board in two. The intent with which it was used can be inferred both from the manner in which it was used and from Ayres' own statements that it was his intent to spank Michael, that he knew he was striking the child, and that he "set out to . . . punish him." That the nature of the instrument, the

manner of its use, and the intent with which it was used made the board capable of inflicting bodily injury is eloquently attested to by the photographs of Michael's injuries, which illuminate the examining physician's words by depicting a child turned into a living welt. The first assignment of error, as far as it pertains to the second degree assault conviction, is therefore without merit.

Ayres next contends that the evidence is insufficient to support a finding that he used a deadly weapon within the meaning of § 28-1205 because he did not intend to use the board to inflict serious bodily injury or death, nor did he use the board in such a manner as to inflict serious bodily injury or death. Section 28-1205(1) provides:

> Any person who uses a firearm, knife, brass or iron knuckles, or any other deadly weapon to commit any felony which may be prosecuted in a court of this state, or any person who unlawfully possesses a firearm, knife, brass or iron knuckles, or any other deadly weapon during the commission of any felony which may be prosecuted in a court of this state commits the offense of using firearms to commit a felony.

Under the earlier cited definition of deadly weapon, our inquiry becomes whether either the manner or intent with which Ayres used the board made it capable of producing death or serious bodily injury.

"Serious bodily injury" is "bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." § 28-109(20). A deadly weapon is therefore any instrument which, in the manner it is used or intended to be used, is capable of producing a bodily injury involving a substantial risk of (1) death, (2) serious permanent disfigurement, or (3) protracted loss or impairment of the function of any organ or body part. The weapon need not actually produce such injuries, but need only be used in a manner which makes it capable of producing them. Cf. *State v. Swigart*, 233 Neb. 517, 446 N.W.2d 216 (1989) (actual infliction of harms described in § 28-109(20) not necessary for conviction of first degree assault; victim need

only be exposed to a substantial risk of these harms).

We have already discussed both the manner and the intent with which the board was used. The board was repeatedly used to strike a 10-year-old child about the buttocks, thighs, arms, back, and face, with blows sufficient to split a piece of wood three-fourths of an inch thick. The fact finder had before it the board and evidence of the manner in which it was used. It also had evidence of the injuries actually inflicted. From this evidence it could reasonably conclude that the manner in which Ayres used the board made it capable of inflicting serious bodily injury. When we combine this with our earlier determination that the evidence supports a finding that the board was used to commit the felony of assault in the second degree, we can only conclude that the evidence is sufficient to support the weapon conviction as well.

This brings us to the second and last assignment of error, the propriety of the sentences. Child abuse and second degree assault are both Class IV felonies, punishable by imprisonment for a period of up to 5 years. § 28-309; § 28-707; Neb. Rev. Stat. § 28-105 (Reissue 1985). The use of a weapon to commit a felony is a Class III felony, punishable by imprisonment of not less than 1 nor more than 20 years. § 28-1205; § 28-105. Section 28-1205(3) requires that the sentence for use of a weapon to commit a felony be consecutive to any other sentence imposed. It is a well-established rule that this court will not disturb on appeal a sentence that is within the statutory limits, absent an abuse of discretion. *State v. Clark, ante* p. 475, 461 N.W.2d 576 (1990).

Recognizing that each of the sentences imposed is within the applicable statutory limits, Ayres' contention, framed both in terms of due process and in reliance upon Nebraska statutory and case law, essentially is that the district court abused its discretion because it failed to consider anything other than his crime. To support this position, Ayres places great weight on the fact that the sentencing court commented on the seriousness of his crimes and made no indication that it considered Ayres' unique situation. We note that the sentencing court is not required to express the reasons for imposing a sentence, even though doing so would simplify our review. *State v. Jallen*, 218

Neb. 882, 359 N.W.2d 816 (1984).

After reviewing the record, including the presentence report, we find no abuse of discretion. The beating Ayres inflicted was brutal and savage, and this fact is not lessened by the financial and health-related stresses he was under. Ayres was aware of his inability to handle stress, since that inability was the basis of his being discharged from the military service, yet he volunteered to take over the care of three adolescent boys, a stressful task even at the best of times and under the best of circumstances.

There being no merit to either of Ayres' assignments of error, we affirm.

AFFIRMED.